82 N.J. Super. 239 (1964)
197 A.2d 400
ROBERT WESTPY, PLAINTIFF-RESPONDENT,
v.
JOHN R. BURNETT, TOWN CLERK AND TOWN MANAGER OF THE TOWN OF BELLEVILLE, DEFENDANT. G. GEORGE ADDONIZIO, PLAINTIFF-APPELLANT,
v.
JOHN R. BURNETT, MUNICIPAL CLERK OF THE TOWN OF BELLEVILLE, DEFENDANT-RESPONDENT. ROBERT M. LATERZA AND VINCENT STRUMOLO, PLAINTIFFS-APPELLANTS,
v.
JOHN R. BURNETT, MUNICIPAL CLERK OF THE TOWN OF BELLEVILLE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 27, 1964.
Decided February 6, 1964.
*240 Before Judges GOLDMANN, KILKENNY and COLLESTER.
Mr. Sam Weiss argued the cause for appellants (Messrs. Addonizio, Sisselman, Nitti & Gordon, attorneys; Mr. Weiss, of counsel).
Mr. Emil M. Wulster argued the cause for plaintiff-respondent.
The opinion of the court was delivered by KILKENNY, J.A.D.
Mayor Robert M. Laterza and Councilmen G. George Addonizio and Vincent Strumolo of Belleville appeal from a judgment of the Law Division directing John R. Burnett, Town Clerk and Town Manager, to notify *241 the said mayor and two councilmen to resign by reason of recall petitions filed with the clerk and, if they do not resign, to fix a date for holding an election for their recall.
Plaintiff Robert Westpy instituted an action to compel the clerk to call the election. Two other separate actions were filed, one by Councilman Addonizio and the other by Mayor Laterza and Councilman Strumolo, in which the court was asked to declare the recall petitions invalid on the ground, inter alia, that they did not state a valid "cause" for removal from office, as required by N.J.S.A. 40:69A-168 and 169. The Law Division heard all of the evidence pertinent to the three matters at the one time, ruled that the petitions were valid and sufficient, and entered the judgment now under review.
All parties joined in a request that we expedite appellate review. We have done so, aided by the commendable cooperation of the parties and their respective counsel, as is evidenced by the fact that the Law Division judgment was entered on December 20, 1963 and oral argument was heard on January 27, 1964.
Certain questions argued in the Law Division as to the sufficiency of the signatures on the recall petitions and the qualifications of the signers have not been raised on this appeal. The parties have chosen to limit the issue before us to the single question, "Do the petitions for recall state valid cause for removal from office?"
N.J.S.A. 40:69A-168 provides:
"Any elective officer shall be subject to removal from office for cause connected with his office, after he has served at least one year, upon the filing of a recall petition and the affirmative vote of a majority of those voting on the question of removal at any general, regular municipal or special election." (Italics ours)
N.J.S.A. 40:69A-169 provides:
"A recall petition * * * shall set forth a statement of the cause upon which the removal is sought." (Italics ours)
*242 The respective recall petitions herein state that removal is sought:
"for cause connected with his office, namely, that he acted in conjunction with two other councilmen to create a majority voting block which negated the value of the minority of the remaining two councilmen. This action served to nullify the effectiveness of the minority as representatives of the people. It also resulted in the usurpation of the functions of the manager and the passage of ordinances of questionable legal validity which are not in the best interests of the people of the community; this conduct being generally in violation of the spirit of the council-manager form of government." (Italics ours)
The mayor and two councilmen argue that this language does not constitute a legally sufficient statement of the cause upon which removal is sought within the intendment of N.J.S.A. 40:69A-168 and 169. They state frankly that they "do not urge that the statement of cause for removal in recall petitions should show malfeasance or nonfeasance in the criminal or administrative sense." But they contend that the statement "should show more than political criticism of majority-block voting stated in the form of vague and generalized crimination. That's what we have here, nothing more. And it's not enough." They maintain that the formation of a majority voting bloc is a fact of political life under a democratic form of government; that the majority vote always rules and thus negates the voting power of the minority; but this does not negate the effectiveness of the minority's representation of its constituents. As they put it: "The majority may overrule, but does not gag, the minority."
As to the assertions in the statement of cause that the conduct of the mayor and two councilmen "resulted in the usurpation of the functions of the manager and the passage of ordinances of questionable legal validity which are not in the best interests of the people of the community," appellants stress that "nothing is specified." From this lack of specificity, they argue that it would be improper to submit the issue of their recall upon a statement of cause for removal couched *243 in such "vague and general" language. In support of their position, they rely upon the following decisions from other jurisdictions: People ex rel. Elliot v. O'Hara, 246 Mich. 312, 224 N.W. 384 (Sup. Ct. 1929); Jacobsen v. Nagel, 255 Minn. 300, 96 N.W.2d 569, 572 (Sup. Ct. 1959); Richard v. Tomlinson, 49 So.2d 798 (Fla. Sup. Ct. 1951); Joyner v. Shuman, 116 So.2d 472 (Fla. D. Ct. App. 1959); State ex rel. Peterkin v. City Council of City of Parkersburg, 95 W. Va. 502, 121 S.E. 489 (Sup. Ct. App. 1924).
The difficulty with these out-of-the-state decisions is that some of them involve local statutes and constitutional provisions different from our own, and others embrace a philosophy with reference to recall out of harmony with that heretofore reflected in decisions of our own courts. Thus, in Jacobsen v. Nagel, supra, the Minnesota Constitution, art. 13, § 2, provided that municipal officers "may not be removed except for malfeasance or nonfeasance in office." (Italics ours) 96 N.W.2d, at p. 572. The grounds specified in the certificate for recall in that case indicated, according to the Minnesota Supreme Court, merely "political criticisms of Nagel's actions as an alderman." (96 N.W.2d, at p. 573) Since the petition for recall did not set forth the constitutionally required "malfeasance or nonfeasance," the recall petitions were declared legally insufficient to warrant the calling of the recall election. Our law does not require a statement of malfeasance or nonfeasance in office.
In the O'Hara case, supra, the Michigan statute, Pub. Acts 1913, No. 325, similarly required that the petition for recall must state as reasons for the recall facts which, if true, would show "nonfeasance, misfeasance or malfeasance in office." 224 N.W., at p. 385. The petition in that case charged not only violation of the Corrupt Practices Act, but also that the elected township treasurer, whose recall was sought, had been given $140 by the township board to employ an assistant, had paid the assistant only $80 of the amount for that purpose, and had converted the balance to his own use. The petition also alleged that "he had brought suit against the township, *244 without reason or just cause, to collect moneys to which he was not legally entitled." The Supreme Court of Michigan held that the petition was sufficient, the reasons for the recall having been set forth with adequate particularity to enable the electors to identify the "official misconduct relied upon for recall." (224 N.W., at p. 385) "It is enough that they [charges of official misconduct] be set up with sufficient particularity to enable the officer and electors to identify the transaction and know the charges made in connection therewith. For like reason, inclusion of insufficient reasons in the petition would not void it if one or more be properly stated." Ibid.
In Richard v. Tomlinson, supra, the Florida Supreme Court held that the affidavit in support of the recall petition, signed by 39 electors, was insufficient because the only stated ground for removal of the councilman was that he "has indulged in activities that are inimical to the best interests of the citizens of Miami Beach." The Florida statute required an affidavit by any 25 qualified electors, containing the name of the councilman whose removal is sought and, like our own statute, a "statement of the grounds for removal." The court interpreted this to mean that "the misdeed charged to the councilman should have some relationship to his performance of the duties of his office. * * * something stronger than a belief or an idea; and the one set out in the affidavit before us amounts to no more than one of these. The paper in no way apprised the petitioner of the charge he would be expected to meet were the recall election held, nor would any elector participating in such an election know what issue was intended to be drawn." 49 So.2d, at p. 798. The court found that the ground asserted as the basis of the recall constituted "nothing more than the statement of a conclusion or opinion without any tangible basis in fact." (49 So.2d, at p. 799) It noted that, if a councilman became allied with one group, the opposing group would doubtless claim that his activities were "inimical to the best interests of the citizens." Accordingly, the Florida court decided that such a generalization is *245 not a sufficient statement of "cause" for removal or a recall election.
In Joyner v. Shuman, supra, another Florida case, the statement in the recall petition for the recall of the city commissioners recited that they had removed the city manager, the city attorney, and the assistant city attorney, and that, as a result, disrepute and injury were wrought upon the city and its citizens. This statement was held to be an insufficient statement of grounds for recall to justify holding such an election under the provision relating to recall in the particular municipal charter. The District Court of Appeal of Florida reasoned that "legitimate or authorized actions of a city official, although such actions caused extensive opposition among a large segment of the city, were not sufficient to justify a recall." 116 So.2d, at p. 480. The court recognized that its decision was "in opposition to the so-called purely `political view' which is simply that the people have the right to vote for the recall of their officials whenever their actions in office are unpopular or irritate a sufficient number to initiate the recall proceeding and a majority of the electorate support the recall group in their views." Reliance was placed upon Richard v. Tomlinson, supra.
In State ex rel. Peterkin v. City Council of the City of Parkersburg, supra, the West Virginia statute required that the petition for removal of the holder of any elective office shall contain a "general statement of the grounds" for which the removal of the officer is sought. 121 S.E., at p. 490. The petition in that case stated as grounds for removal that the councilman and mayor, whose removal was sought, had not been "honestly and fairly elected." The court held that the petition did not satisfy the statutory requirement because the grounds for removal stated therein did not involve the moral fitness or official conduct of the officers sought to be removed. The court refused to adopt the view that the matter is entirely for the electors and that "it would make no difference whether any grounds at all were stated." (121 S.E., at p. 493) It ruled that "cause" for removal by the recall procedure was *246 intended to embrace official conduct after election "and not as a mere method of contest on the ground that he had not been so elected." (121 S.E., at p. 494)
We agree with the conclusion of the West Virginia court that a recall election is not the means for testing whether the incumbents, whose recall is sought, were "honestly and fairly elected." Our election laws provide the remedy for determining whether a person has been "honestly and fairly elected." See, for example, N.J.S.A. 19:28-1 et seq. and 19:29-1 et seq. Such a statement of cause in recall petitions, standing alone as in the Parkersburg case, would be patently insufficient to satisfy our statutory requirement. N.J.S.A. 40:69A-168 and 169. These provisions require some cause "connected with his office," rather than conduct anterior to assumption of office.
We also concur with Parkersburg in refusing to adopt the view of those who say that "it would make no difference whether any grounds at all were stated." N.J.S.A. 40:69A-169 requires the recall petitions to set forth "a statement of the cause upon which removal is sought." A failure to state any cause in the recall petitions would make them fatally defective. So, too, a statement of cause not connected with the office, and without more, would require a judgment that a recall election may not be held on the basis of such recall petition.
The courts throughout the United States have generally adopted the view that the power granted to electors of a municipality to remove certain public officers through recall procedure is political in nature and that it is for the people, and not the courts, to decide the truth and sufficiency of the grounds asserted for removal. In most states, statutory and charter provisions as to recall are liberally interpreted in favor of the electorate. This liberality is also extended to the usually required statement or general statement "of the grounds upon which the removal is sought."
Thus, in State ex rel. Hackley v. Edmonds, 150 Ohio St. 203, 80 N.E.2d 769 (1948), the Ohio Supreme Court held *247 sufficient, as stated grounds for removal, allegations in an affidavit required to obtain recall petitions that the councilman involved had violated his campaign pledges; had circumvented and betrayed the desires and purposes of the electors by whose votes he was elected to office; and his conduct had been inimical to the welfare and best interests of the city and of its citizens.
In State ex rel. Topping v. Houston, 94 Neb. 445, 143 N.W. 796, 50 L.R.A., N.S. 861 (1913), the Nebraska Supreme Court, interpreting the statutory requirement that the recall petition "shall contain a general statement of the grounds upon which the removal is sought," held sufficient a recall petition wherein the grounds for removal asserted were:
"Said Houston, in attempting to discharge the duties and trusts of said office [mayor and member of the city council], is grossly extravagant with the public funds of said city; manifestly partial, prejudicial, and malevolent in exercising the prerogatives of said office; and because of his nonfeasance and malexecution of the duties of said office; and because of his obvious incompatibility of temperament to discharge the duties of said office economically and to the best interest of the citizens and taxpayers of said city of Nebraska City."
Contention was made that these grounds stated mere conclusions and that an elected officer should not be called upon to defend his position against frivolous attacks. The Nebraska court found adequate safeguard in the requirement that the petitions must be signed by 30% of the electors, under Nebraska law. It noted that the policy of recall "may be wise or it may be vicious in its results," but the power has been vested in the electors by the legislature.
In Abbey v. Green, 28 Ariz. 53, 235 P. 150 (Sup. Ct. 1925), it was held that the grounds assigned in the petition for recall of the elected superior court judge involved therein need not charge specific misconduct in office, any reasons of the electorate for wishing to be rid of him being sufficient. The Arizona Constitution required the petition to contain "a general statement in not more than 200 words of the grounds for such removal." 235 P., at p. 152. Among the grounds *248 alleged were that: "He is not worthy of belief. He has a violent and ungovernable temper. He suffers from hallucinations. He violates the law by presiding in court with a pistol in his hip pocket." The grounds were deemed to be sufficient. The court noted, 235 P., at p. 154: "The grounds or reasons assigned in the petition for the recall may be very general in their nature and character. It was the evident purpose to permit the electorate to get rid of an obnoxious and unsatisfactory officer with whom, for any or no reason whatever for that matter, they may have become displeased." 235 P., at p. 154.
Our former Supreme Court was called upon in Leers v. Diehl, 167 A. 216, 11 N.J. Misc. 525 (1933), to interpret the statutory requirement that the petitions for recall must contain "a general statement of the grounds upon which the removal is sought." L. 1923, c. 113; R.S. 40:84-12. The separate petitions in that case sought the removal of five councilmen of Teaneck. The court held that the municipal clerk is under no duty to determine whether the reasons stated in the petitions seeking a recall election are proper or not; and if the requisite number of signers are on the petitions, the clerk should call an election. However, the court did say, 167 A., at p. 217, 11 N.J. Misc., at p. 526:
"It may be, though we do not so decide, that if the petitions should state no grounds whatever, they would be ineffective as requiring the clerk to notify the incumbents and call an election, but this is not the case here."
We might properly make the same observation, that the instant case is not one wherein the petitions state no grounds whatever. But, as indicated above, if that were the case we would not hesitate to declare them legally deficient because of noncompliance with N.J.S.A. 40:69A-169.
The signers of the petitions in Leers v. Diehl gave as their reasons for removal that, in their opinion, each of the councilmen "has not permitted the municipal manager to exercise the full authority of his office within the spirit of the Municipal *249 Manager Act." In addition, it was charged against Councilman Warner that "in our opinion he has usurped the authority of his office to his personal interest, and further, he has moved out of the township of Teaneck and is not an inhabitant thereof." The petition involving Councilman Paquin alleged further that "he has failed to oppose the introduction of legislation attempting to abrogate the constitutional right of free speech." Councilman Morten was further charged with having "sponsored legislation attempting to abrogate the constitutional right of free speech," and "has been arrogant and autocratic in the performance of his official duties." This last charge was also made against Councilman Van Wagner. The fifth councilman, Ely, had resigned after the rule to show cause was signed.
In disposing of the issue of the sufficiency of the grounds stated in the recall petitions, the court said:
"A reading of the foregoing grounds satisfies us that while they may be open to criticism in other respects, they are clearly sufficient for the purposes of the statute. That statute has placed the power of recall in the hands of the electorate upon compliance with certain conditions. Whether or not the power of recall is a good thing, is a question for the legislature to decide, as well as the conditions to be satisfied. These petitions have clearly met those conditions." (167 A., at p. 217, 11 N.J. Misc., at p. 527)
That language is equally appropriate herein.
Appellants do not dispute the correctness of the decision in Leers v. Diehl, but contend that it is distinguishable from the instant case because (1) the statute applicable therein was different, and (2) the charges contained much more than the "general statement" herein. We find no significant difference between the statute in Leers v. Diehl, L. 1923, c. 113; R.S. 40:84-12, which required the recall petition to contain "a general statement of the grounds upon which the removal is sought," and the statute pertinent here, N.J.S.A. 40:69A-169, requiring the petition to contain "a statement of the cause upon which the removal is sought." The words "grounds" and "cause" are synonymous. "Statement" in the *250 later statute does not connote anything more than "general statement" in the earlier provision.
Our Legislature has not, as have the legislatures in some other states, defined what shall constitute "cause" for removal, beyond stating that it must be a cause "connected with his office." It has not specified that the official conduct must amount to malfeasance, misfeasance or nonfeasance in office. Appellants concede that conduct of that gravity is not necessary for a recall. The statute does not require a bill of particulars delineating specific acts. Couched as the statute is in general language, the inference may fairly be drawn that the Legislature intended a statement of cause for removal general in language but, at the same time, sufficiently informative in character so as to reflect the basis for the public dissatisfaction with the official conduct of those whose recall is being sought.
The policy of the Florida courts in requiring more specific allegations is understandable because in that state the recall can be initiated on the affidavit of a mere 25 qualified electors. So, too, Nebraska's more liberal view makes sense when we consider that the petitions in that state must be signed by at least 30% of the electors. In our own State, the law requires a recall petition to be signed by at least 25% of the registered voters. N.J.S.A. 40:69A-169. In the instant case, the petitions were signed by more than 4,300 registered voters. It is reasonable to assume that this great number of people found the statement of cause in the petitions to be sufficiently informative to warrant their affixing their signatures and incurring the expense of a public election.
We find that the statement of cause for removal in the instant recall petitions is a sufficient compliance with N.J.S.A. 40:69A-169 and that judicial interference with the will of the voters of Belleville to hold their recall election would not be warranted. The cause asserted is connected with the offices of those sought to be removed. Though general in language, the stated grounds of public dissatisfaction with the incumbents are spelled out with sufficient clarity for the *251 officeholders and electorate to produce an intelligent vote on the issue. The truth or falsity of the charges can be established during the course of the campaign preceding the election. The proponents of recall will, undoubtedly, furnish the particulars of their charges. On the other hand, the incumbents will strive to demonstrate the emptiness of the claims. But the assertions of a majority bloc to negate the value of other duly elected representatives of the people, resulting in usurpation of the functions of the municipal manager in violation of the spirit of the council-manager form of government, and the passage of ordinances of questionable legal validity, are adequate.
The judgment is affirmed.