QUESTION: Is land which is subject to a 10-year covenant that restricts the use of the land for only outdoor recreational or park purposes, but which denies access and other rights in and to the land to a county government or the public, entitled to preferential ad valorem tax treatment pursuant to s. 193.501, F.S.?
SUMMARY: Land subject to a 10-year covenant that restricts its use to only outdoor recreational or park purposes, but which denies access and other rights in and to the land to a county government or the public, is nevertheless entitled to preferential ad valorem tax treatment pursuant to s. 193.501, F.S., if the board of county commissioners determines that it is in the public interest to accept such covenant and does accept such covenant. Your question is answered in the affirmative assuming the governing body of the county determines that it is in the public interest to elect to accept and does accept the covenant in question. The file submitted with your request reflects that the land subject to the covenant consists of almost 60 acres adjacent to or in the immediate vicinity of the personal residence of the fee owner, is in its virgin state, and is quite scenic with many pines and cabbage palms thereon. The land is also suitable for horseback riding and the owner presently maintains stable facilities on the property in the vicinity of the owner's place of residence. The covenant denies access or entry to the public or the county and expressly denies the grant of any rights in and to the property to the county or any third party. The pertinent provisions of s.193.501, F.S., allowing favorable tax treatment for lands dedicated to outdoor recreational or park purposes are as follows: (1) The owner or owners in fee of any land which is utilized for outdoor recreational or park purposes may, by appropriate instrument: * * * * * (b) Covenant with the governing board of any county in this state within which said land is located . . . for a term of not less than ten years that the said land shall not be used by the owner for any purpose other than outdoor recreational or park purposes. (2)(a) The governing board of any county . . . is authorized and empowered in its discretion to accept any and all instruments . . . establishing a covenant pursuant to subsection (1) . . . . * * * * * (3) When . . . a covenant has been executed and accepted by said board, the lands . . . shall be thereafter assessed as outdoor recreational or park lands upon an acreage basis, so long as such lands are actually used for outdoor recreational or park purposes . . . . In valuing such land for tax purposes, an assessor or any taxing agency shall consider no factors other than those relative to its value for the present use. . . . If the covenant extends for a period less than ten years, the land shall be assessed under the provisions of s.193.011, recognizing the restriction and length thereof of any covenant placed on the use of the land under the provisions of subsection (1) above. * * * * * (6)(a) "Outdoor recreational or park purposes" includes, but is not necessarily limited to, boating, golfing, camping, swimming, horseback riding, historical, archaeological, scenic or scientific sites; (Emphasis supplied.) Thus, pursuant to the terms of s. 193.501, supra, the governing board of a county may in its discretion elect to accept any and all covenants by a landowner restricting the use of his or her lands to only outdoor recreational or park purposes for a period of at least 10 years. Upon acceptance of any such covenant, the lands which are the subject of such covenant shall thereafter be assessed as outdoor recreational or park lands upon an acreage basis so long as such lands are actively used for outdoor recreational or park purposes [as defined by s. 193.501(6)(a)] and so long as the duration of the covenant accepted extends for a period of 10 years or longer on January 1 of each tax year. If any covenant extends for a period less than 10 years, the lands shall be assessed under the provisions of s. 193.011, F.S., recognizing the restriction and length thereof of the covenant placed on the use of the land under s. 193.501(1), F.S. Also see s. 193.501(4), F.S. Legislative intent must be ascertained and must govern in construing a statute and, where the language is plain and unambiguous, it needs no construction and itself fixes legislative intent. Platt v. Lanier, 127 So.2d 912 (2 D.C.A. Fla., 1961). A court may not construe an unambiguous statute in a way which would extend, modify, or limit its express provisions or its reasonable and obvious implications and is not authorized to engage in semantic niceties or speculations. American Bankers Life Assur. Co. of Fla. v. Williams, 212 So.2d 777 (1 D.C.A. Fla., 1968), and Tropical Coach Line, Inc. v. Carter, 121 So.2d 779 (Fla. 1960). There is no qualifying or restrictive language in Art. VII, s. 4, State Const., or in s. 193.501, supra, requiring as a condition precedent to the acceptance of a covenant that a landowner make his or her property available for county or public access or use, and I find no legislative intent deducible from the provisions of s. 193.501 that the Legislature imposed such a condition before the particular governmental unit could accept such a covenant. Rather the governmental unit is empowered "in its discretion" to accept "any and all" covenants and the lands subject thereto must be used "by the owner" or others only for outdoor recreational or park purposes pursuant to s. 193.501(1)(b) and (2)(a). Also see s.193.501(4), providing that after the owner of the land executes such covenant he or she shall not change the use of the land from outdoor recreational or park purposes during the term of the covenant without first obtaining a written release from the county commission and recording the same in the public records. Therefore, lands subject to a covenant that restricts the use of the land for only outdoor recreational or park purposes, but denies physical access and other rights in and to the land to the county government or the public, may nevertheless be entitled to the preferential ad valorem tax treatment provided for under s.193.501 if the governing body determines that it is in the public interest to elect to accept such covenant. It is apparent that the Legislature has determined that nondevelopment of certain lands and the contractual commitment for their maintenance in the future as "parks," "greenery," "open spaces," "landscaped areas," or "scenic sites" may be in the public interest, for which the individual landowner may receive preferential tax treatment in exchange for such nondevelopment and maintenance. See Ch. 67-528, Laws of Florida, and s. 193.501(6)(a), F.S. Cf., s. 375.251, F.S. Article VII, s. 4(a), State Const., authorizes the Legislature to classify and value for tax purposes on the basis of character or use lands used exclusively for noncommercial recreational purposes without incorporating an express requirement for public use or physical access thereto by the public: Agricultural land or land used exclusively for noncommercial recreational purposes may be classified by general law and assessed solely on the basis of character or use. (Emphasis supplied.) [See Interlachen Lakes Estates, Inc. v. Snyder, 304 So.2d 433 (Fla. 1973), at page 434: "Apparently the revisers felt that the four classes of property mentioned in these two subsections should be valued according to different standards than all others."] Finally, I note as a policy matter it is advisable that the several boards of county commissioners, like all other public officers discharging governmental duties, exercise their discretion to accept such a covenant only when they determine the public interest will be served thereby. Such determination may include acceptance of a covenant to maintain lands without development in their virginal scenic state without public access to such lands in exchange for preferential tax treatment. The particular governmental body may, of course, conclude that its responsibilities are properly discharged and the public is best served only when the public is granted access to outdoor recreational or park lands and may accordingly require, as a condition to the acceptance of the covenant, physical access to, and use by the public of, such lands. However, as above stated, the Legislature has not required as a condition before the particular governmental body may accept a covenant that the public be granted physical use of and access to the property subject to such covenant. Rather, the particular governmental body is empowered to accept in its discretion covenants even without access by the public to the lands when it has determined that such action is in the interest of the public.